'08 CIV 5355

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
OLD LADDER LITIGATION CO., LLC,
as Litigation Designee on behalf of the
Liquidation Trust

                                   Plaintiff,

      v.

PRICEWATERHOUSECOOPERS, LLP,
a Delaware limited liability partnership,

                                   Defendant.
------------------------------------------------------------------x

Case No.

COMPLAINT

JURY TRIAL DEMANDED

Plaintiff Old Ladder Litigation Co., LLC, for its Complaint against Defendant PricewaterhouseCoopers, LLP ("PWC"), alleges as follows:

## NATURE OF THE CASE

1.      This action seeks damages against PWC for its accounting malpractice and professional negligence.

2.      Werner Co. and its affiliates (collectively the "Company"), a major U.S. ladder manufacturing company once owned by the Werner and Solot families, went bankrupt in 2007 after its colossal financial collapse resulting from a series of illegal shareholder distributions, massive borrowings from creditors, and debt restructurings designed to further self-dealing. The Company's downfall began in 1997.

3.      In or about 1997, certain Werner and Solot family shareholders approaching retirement age, along with Company management, sought to liquidate the majority of their ownership and relinquish control of the Company to a third party. Although the Company's

financial statements showed only $75 million in equity, the Company's directors and officers, the Werner and Solot family controlling shareholders, and the Werner and Solot families developed and devised a nefarious scheme to distribute more than $330 million to the Werner and Solot family shareholders. To fund the $330 million payout, the Company borrowed approximately $300 million in bond and bank debt.

4. Substantially all of the proceeds from the 1997 debt were paid to the Werner and Solot families via $330.7 million share redemption and/or dividend.

5. According to the Company's audited, publicly-filed financial statements, the 1997 shareholder cashout effectively rendered the Company insolvent, with a whopping negative net worth of $153.7 million.

6. Since 1997, the Company, whose debt capacity was exhausted, encountered significant downturn in business and experienced increased commodity prices and competition.

7. In 2003, rather than solving the Company's financial woes, numerous Werner and Solot family shareholders and Company management, by and through certain Company insiders' material misrepresentations to lenders and bondholders regarding the Company's financial prospects and intentional concealment of material adverse information regarding the Company's costumer relationships, borrowed even more money to fund a staggering $150 million dividend distribution of cash and property to shareholders.

8. The increased debt and the shareholder cashout in 2003 left the Company with a publicly-reported negative net worth in excess of $230 million.

9. From 2004 to 2006, despite the Company's increasing financial deterioration, certain Company insiders pursued various debt modification and refinancing transactions which provided no value to the Company and served only to preserve the self-interested insiders and

NY1 129462v1 06/11/08

shareholders' equity option and to prolong the Company's inevitable bankruptcy filing.

10. In or about May, 2004, the Company's senior secured lenders approved a loan amendment proposed by management, which, among other things, increased the Company's maximum debt-to-bank EBITDA ratio, allowing the Company to avoid default on its prior debt covenants in connection with the 1997 and 2003 shareholder cashouts.

11. In or about March, 2005, the Company sought and procured a 40-day waiver of debt covenants from the banks to arrange a $100 million senior secured second lien refinancing.

12. In or about March, 2005, the Company's board of directors approved the proposed 2005 senior secured second lien refinancing.

13. At all relevant times herein, PWC, the Company's retained auditors, rendered accounting and auditing services, including, without limitation, audit opinions, in connection with the Company's debt modification and refinancing transactions, as well as other related financial activities.

14. At all relevant times herein, PWC repeatedly failed or refused to provide the Company with timely and accurate audit opinions regarding the Company's debt modification and refinancing transactions, as well as other related financial activities.

15. PWC's dilatory and deficient audit opinions prevented the Company from timely filing necessary documents with the Security Exchange Commission, facilitated the self-interested insiders and shareholders' breaches of fiduciary duties and their improper efforts to prolong the Company's existence, and contributed to the Company's delayed bankruptcy filing which ultimately caused the Company substantial financial harm.

## PARTIES

16. Plaintiff Old Ladder Litigation Co., LLC is the court-approved and court-authorized Litigation Designee of the Old Ladder Liquidation Trust, which was established in connection with the Revised Second Amended Liquidating Plan dated September 14, 2007 (the "Plan") confirmed on October 25, 2007, by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in the Chapter 11 cases and proceedings (the "Bankruptcy Proceedings") of the Debtors. Plaintiff is organized under the laws of the State of Delaware.

17. The effective Date of the Plan occurred on October 31, 2007. On that date the Debtors transferred all of their right, title, and interest in all of the claims and causes of action asserted herein to the Liquidation Trust. The agreement establishing the Liquidation Trust provides: "[e]xcept as provided in the Plan, all causes of Action that the respective Debtors and their Estates may hold against any Person or Entity shall automatically vest in the Liquidation Trust. The Liquidation Trust shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Causes of Action without the consent or approval of any third party and without any further order to the Bankruptcy Court, except as otherwise provided herein or in the Liquidation Trust Agreement. . . . The Litigation Designee, on behalf of the Liquidation Trust, shall pursue such Causes of Action. . . ."

18. The Litigation Designee has sole authority and discretion to act on behalf of the Liquidation Trust with respect to the claims asserted herein.[1]

19. Defendant PWC is a limited liability partnership organized under the laws of Delaware, with its principal place of business in New York, New York.

---

[1] As the party responsible for bringing claims on behalf of the Liquidation Trust, the Litigation Designee has been provided with certain of the books and records of the Company. Many of the allegations are based upon such books and records.

4

## JURISDICTION

20.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334.

## VENUE

21.  Venue is proper in this District pursuant to 28 U.S.C. § 1409(c).

## FIRST CLAIM FOR RELIEF
### (Professional Negligence)

22.  Plaintiff Old Ladder Litigation Co., LLC repeats and realleges paragraphs 1 through 21 as though fully set forth herein.

23.  An accountant owes a duty to its client to render services with the degree of skill and competence exercised by members of the accounting profession and in accordance with accepted professional standards. Specifically, a public accountant must exercise the care and competence expected of persons in his or her profession to ascertain the facts on which his or her report is made, to draw inferences from facts not stated in his or her report, and to communicate the information so that it may be understood.

24.  The Auditing Standards Board ("ASB") of the American Institute of Certified Public Accountants ("AICPA") establishes the generally accepted auditing standards ("GAAS") for the accounting profession. The ASB also develops and issues standards in the form of Statements on Accounting Standards ("SASs"). Rule 202 of the AICPA Code of Professional Conduct requires auditors to comply with the standards promulgated by the ASB – including GAAS and related SASs. Additional professional standards are found in the generally accepted accounting principles ("GAAP"). GAAP is comprised of conventions, rules and procedures that describe accepted accounting practice at a particular time. Financial Accounting Standards

("FAS") issued by the Financial Accounting Standards Board ("FASB") and, together with SEC rules and regulations, opinions of the Accounting Principles Board ("APB") and Accounting Research Bulletins ("ARB") issued by the AICPA, represent applicable authoritative guidance for GAAP. The Emerging Issues Task Force ("EITF") of the FASB represents another level of authoritative GAAP.

25. GAAS and GAAP, together with relevant interpretive materials, represent the accepted professional standards applicable to PWC. Failure to comply with any of these standards constitutes a breach of the professional duty of care.

26. PWC, at a minimum, owed the Company a duty to perform the services in accordance with accepted professional standards. Given its role as one of the "Big Four" accounting firms in the United States, and the fact that it is reputedly the world's largest professional services firm, PWC will be held to an increased standard of care and duty.

27. PWC failed in its responsibilities to the Company. PWC committed errors in violation of accepted industry standards and negligently caused or allowed the Company's true financial condition to remain hidden from regulators, creditors, and others. PWC's conduct falls far below the general standards of due professional care in the accounting industry and constitutes an unequivocal breach of its duty to the Company.

28. As a proximate result of PWC's negligence, the Company suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Old Ladder Litigation Co., LLC demands judgment as follows:

A. With respect to the first claim:

    (1) For monetary damages according to proof at trial;

    (2) Pre-judgment and post-judgment interest; and

    (3) Attorney's fees and costs;

    (4) Such orders as are necessary to effectuate this Prayer for Relief or to preserve this Court's jurisdiction over the parties and issues herein; and

    (5) Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff Old Ladder Litigation Co., LLC hereby demands a trial by jury of any and all issues so triable.

Dated: June 11, 2008              Respectfully submitted,

FOX ROTHSCHILD LLP

*/s/ Samantha*

Samantha H. Evans (SE 0728)
100 Park Avenue, 15th Fl.
New York, NY 10017
Telephone: 212-878-7900
Facsimile: 212-692-0940
*Attorneys for Plaintiff*
*Old Ladder Litigation Co., LLC,*
*As Litigation Designee on behalf*
*Of the Liquidation Trust*

Anthony M. Saccullo*
Daniel K. Astin*
FOX ROTHSCHILD LLP
Citizens Bank Center, Suite 1300
919 North Market Street
Wilmington, DE 19801
Telephone: 302-654-7444
Facsimile: 302-656-8920

**FREEDMAN & TAITELMAN, LLP**
Michael A. Taitelman*
1901 Avenue of the Stars, Suite 500
Los Angeles, California  90067
Telephone: 310-201-0005
Facsimile: 310-201-0045

*seeking admission pro hac vice*