UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
OLD LADDER LITIGATION CO., LLC,
as Litigation Designee on behalf of the
Liquidation Trust

                              Plaintiff,

v.

PRICEWATERHOUSECOOPERS, LLP,
a Delaware limited liability partnership,

                              Defendant.
----------------------------------------------------------------x

Case No. 08-Civ-5355 (HB)

**AMENDED COMPLAINT
AND JURY DEMAND**

RECEIVED
JUN 13 2008
U.S.D.C. S.D.N.Y.
CASHIERS

      Plaintiff Old Ladder Litigation Co., LLC, for its Complaint against Defendant PricewaterhouseCoopers, LLP ("PWC"), alleges as follows:

## NATURE OF THE CASE

      1.     This action seeks damages against PWC for its accounting malpractice and professional negligence.

      2.     Werner Co. and its affiliates (collectively the "Company"), a major U.S. ladder manufacturing company once owned by the Werner and Solot families, went bankrupt in 2007 after its colossal financial collapse resulting from a series of illegal shareholder distributions, massive borrowings from creditors, and debt restructurings designed to further self-dealing. The Company's downfall began in 1997.

      3.     In or about 1997, certain Werner and Solot family shareholders approaching retirement age, along with Company management, sought to liquidate the majority of their ownership and relinquish control of the Company to a third party. Although the Company's

1

financial statements showed only $75 million in equity, the Company's directors and officers, the Werner and Solot family controlling shareholders, and the Werner and Solot families developed and devised a nefarious scheme to distribute more than $330 million to the Werner and Solot family shareholders. To fund the $330 million payout, the Company borrowed approximately $300 million in bond and bank debt.

4. Substantially all of the proceeds from the 1997 debt were paid to the Werner and Solot families via $330.7 million share redemption and/or dividend.

5. According to the Company's audited, publicly-filed financial statements, the 1997 shareholder cashout effectively rendered the Company insolvent, with a whopping negative net worth of $153.7 million.

6. Since 1997, the Company, whose debt capacity was exhausted, encountered significant downturn in business and experienced increased commodity prices and competition.

7. In 2003, rather than solving the Company's financial woes, numerous Werner and Solot family shareholders and Company management, by and through certain Company insiders' material misrepresentations to lenders and bondholders regarding the Company's financial prospects and intentional concealment of material adverse information regarding the Company's costumer relationships, borrowed even more money to fund a staggering $150 million dividend distribution of cash and property to shareholders.

8. The increased debt and the shareholder cashout in 2003 left the Company with a publicly-reported negative net worth in excess of $230 million.

9. From 2004 to 2006, despite the Company's increasing financial deterioration, certain Company insiders pursued various debt modification and refinancing transactions which provided no value to the Company and served only to preserve the self-interested insiders and

shareholders' equity option and to prolong the Company's inevitable bankruptcy filing.

10. In or about May, 2004, the Company's senior secured lenders approved a loan amendment proposed by management, which, among other things, increased the Company's maximum debt-to-bank EBITDA ratio, allowing the Company to avoid default on its prior debt covenants in connection with the 1997 and 2003 shareholder cashouts.

11. In or about March, 2005, the Company sought and procured a 40-day waiver of debt covenants from the banks to arrange a $100 million senior secured second lien refinancing.

12. In or about March, 2005, the Company's board of directors approved the proposed 2005 senior secured second lien refinancing.

13. At all relevant times herein, PWC, the Company's retained auditors, rendered accounting and auditing services, including, without limitation, audit opinions, in connection with the Company's debt modification and refinancing transactions, as well as other related financial activities.

14. At all relevant times herein, PWC repeatedly failed or refused to provide the Company with timely and accurate audit opinions regarding the Company's debt modification and refinancing transactions, as well as other related financial activities.

15. PWC's dilatory and deficient audit opinions prevented the Company from timely filing necessary documents with the Security Exchange Commission, facilitated the self-interested insiders and shareholders' breaches of fiduciary duties and their improper efforts to prolong the Company's existence, and contributed to the Company's delayed bankruptcy filing which ultimately caused the Company substantial financial harm.

## PARTIES

16. On June 12, 2006 (the "Petition Date"), Old Ladder Co. (DE) Inc. (f/k/a Werner Holding Co. (DE), Inc., *et al.*)[1] (collectively the "Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Proceedings") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

17. On June 13, 2006, the Bankruptcy Court entered an Order authorizing the joint administration of the Debtors' cases. The bankruptcy cases are jointly administered under Case No. 06-10578.

18. Plaintiff Old Ladder Litigation Co., LLC is the court-approved and court-authorized Litigation Designee of the Old Ladder Liquidation Trust, which was established in connection with the Revised Second Amended Liquidating Plan, dated September 14, 2007 (the "Plan") and confirmed on October 25, 2007 by the Bankruptcy Court. Plaintiff is organized under the laws of the State of Delaware.

19. The effective Date of the Plan occurred on October 31, 2007. On that date the Debtors transferred all of their right, title, and interest in all of the claims and causes of action asserted herein to the Liquidation Trust. The agreement establishing the Liquidation Trust provides: "[e]xcept as provided in the Plan, all causes of Action that the respective Debtors and their Estates may hold against any Person or Entity shall automatically vest in the Liquidation Trust. The Liquidation Trust shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Causes of Action without the consent

---

[1] The Debtors are the following entities: (i) Old Ladder Co. (DE), Inc. (f/k/a Werner Holding Co. (DE), Inc., a/k/a Ad Valorem Properties, Inc., a/k/a ARDEE Investment Co., Inc., a/k/a Manufacturers Indemnity and Insurance Company of America, a/k/a Olympus Properties, Inc., a/k/a Wentworth Institutional Realty, Inc. a/k/a Werner Financial, Inc.); (ii) Old Ladder Co. (PA), Inc. (f/k/a Werner Holding Co. (PA), Inc.); (iii) Old Ladder, Co. (f/k/a Werner Co., a/k/a Florida Ladder Company, a/k/a Gold Medal Ladder Company, a/k/a Kentucky Ladder Company, a/k/a Olympus Properties, Inc., a/k/a Phoenix Management Services, Inc., a/k/a R.D. Arizona Ladder Corp., a/k/a Wentworth Institutional Realty, Inc., a/k/a Werner Extruded Products, a/k/a Werner Ladder Company, a/k/a Werner Management Company) ("Werner Co."); and (iv) Old Ladder Technologies, Inc. (f/k/a WIP Technologies, Inc.).

or approval of any third party and without any further order to the Bankruptcy Court, except as otherwise provided herein or in the Liquidation Trust Agreement. . . . The Litigation Designee, on behalf of the Liquidation Trust, shall pursue such Causes of Action. . . ."

20. Causes of Action include actions seeking recovery of preferential transfers against recipients of pre-petition funds.

21. The Litigation Designee has sole authority and discretion to act on behalf of the Liquidation Trust with respect to the claims asserted herein.[2] Article XII.A of the Plan provides:

> Except as otherwise provided in the Plan, all Causes of Action that the respective Debtors and their Estates may hold against any Person or Entity shall automatically vest in the Liquidation Trust.

22. Under the Plan, the "Litigation Designee" has:

> [S]ole authority and discretion on behalf of the Liquidation Trust to evaluate and determine strategy with respect to the Causes of Action, and to litigate, settle, transfer, release or abandon any and all Causes of Action on behalf of the Liquidation Trust, in each case, on any terms and conditions as it may determine in good faith based on the best interests of the Beneficiaries.

Plan, Art. VI.F.

23. Defendant PWC is a limited liability partnership organized under the laws of Delaware, with its principal place of business in New York, New York.

## JURISDICTION

24. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334.

## VENUE

25. Venue is proper in this District pursuant to 28 U.S.C. § 1409(c).

---

[2] As the party responsible for bringing claims on behalf of the Liquidation Trust, the Litigation Designee has been provided with certain of the books and records of the Company. Many of the allegations are based upon such books and records.

## COUNT I
### (Professional Negligence)

26.   Plaintiff Old Ladder Litigation Co., LLC repeats and realleges paragraphs 1 through 25 as though fully set forth herein.

27.   An accountant owes a duty to its client to render services with the degree of skill and competence exercised by members of the accounting profession and in accordance with accepted professional standards. Specifically, a public accountant must exercise the care and competence expected of persons in his or her profession to ascertain the facts on which his or her report is made, to draw inferences from facts not stated in his or her report, and to communicate the information so that it may be understood.

28.   The Auditing Standards Board ("ASB") of the American Institute of Certified Public Accountants ("AICPA") establishes the generally accepted auditing standards ("GAAS") for the accounting profession. The ASB also develops and issues standards in the form of Statements on Accounting Standards ("SASs"). Rule 202 of the AICPA Code of Professional Conduct requires auditors to comply with the standards promulgated by the ASB – including GAAS and related SASs. Additional professional standards are found in the generally accepted accounting principles ("GAAP"). GAAP is comprised of conventions, rules and procedures that describe accepted accounting practice at a particular time. Financial Accounting Standards ("FAS") issued by the Financial Accounting Standards Board ("FASB") and, together with SEC rules and regulations, opinions of the Accounting Principles Board ("APB") and Accounting Research Bulletins ("ARB") issued by the AICPA, represent applicable authoritative guidance for GAAP. The Emerging Issues Task Force ("EITF") of the FASB represents another level of authoritative GAAP.

29.   GAAS and GAAP, together with relevant interpretive materials, represent the

accepted professional standards applicable to PWC. Failure to comply with any of these standards constitutes a breach of the professional duty of care.

30. PWC, at a minimum, owed the Company a duty to perform the services in accordance with accepted professional standards. Given its role as one of the "Big Four" accounting firms in the United States, and the fact that it is reputedly the world's largest professional services firm, PWC will be held to an increased standard of care and duty.

31. PWC failed in its responsibilities to the Company. PWC committed errors in violation of accepted industry standards and negligently caused or allowed the Company's true financial condition to remain hidden from regulators, creditors, and others. PWC's conduct falls far below the general standards of due professional care in the accounting industry and constitutes an unequivocal breach of its duty to the Company.

32. As a proximate result of PWC's negligence, the Company suffered damages in an amount to be proven at trial.

## COUNT TWO
### (Avoidance of Preferential Transfers Pursuant to 11 U.S.C. § 547)

33. Plaintiff Old Ladder Litigation Co., LLC repeats and realleges paragraphs 1 through 32 as though fully set forth herein.

34. On or within ninety (90) days before the Petition Date (the "Preference Period"), Werner Co., or an affiliate, transferred and/or caused to be transferred, to or for the benefit of Defendant, one or more payments of monies and/or transfers of goods in a total amount of no less than $280,952.00, as more specifically described on Exhibit A attached hereto (the "Transfers").

35. Upon information and belief, each of the Transfers constituted a transfer of an interest in property of one or more of the Debtors.

36. Each of the Transfers was made, or caused to be made, to or for the benefit of the Defendant, a creditor of one or more of the Debtors.

37. The Transfers were made, or caused to be made, for or on account of one or more antecedent debts owed by one or more of the Debtors to Defendant prior to the date on which such Transfer was made.

38. The Debtors were insolvent for purposes of section 547(b) of the Bankruptcy Code when each of the Transfers was made.

39. The Transfers enabled Defendant to receive more than it would have received if: (i) the cases were cases under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) the Defendant received payment of the debt(s) relating to each such Transfer to the extent provided by the provisions of the Bankruptcy Code.

40. Based upon the foregoing, the Transfers constitute avoidable preferential transfers pursuant to section 547(b) of the Bankruptcy Code.

### COUNT THREE – ALTERNATIVE COUNT
### (Fraudulent Conveyance Pursuant to 11 U.S.C. §548)

41. Plaintiff Old Ladder Litigation Co., LLC repeats and realleges paragraphs 1 through 40 as though fully set forth herein.

42. Pursuant to §548 of the Bankruptcy Code, the Litigation Designee may avoid any transfer of an interest of the debtor in property that was made within two years of the petition date if the debtor: (i) received less than reasonable equivalent value for the transfer, and (ii) was insolvent on the date that the transfer was made. 11 U.S.C. §548(a).

43. The Debtors transferred and/or caused to be transferred, to or for the benefit of Defendant, one or more payments of monies and/or transfers of goods in a total amount of no

less than $280,952.00, as more specifically described on Exhibit "A" attached hereto (the "Transfers").

44. The Debtors received less than a reasonably equivalent value in exchange for the Transfer(s) and/or obligation.

45. The Debtors were insolvent at the time of the Transfers.

46. Based upon the foregoing, the Transfers constitute fraudulent transfers pursuant to section 548 of the Bankruptcy Code.

## COUNT FOUR
### (Recovery of Post-Petition Transactions Pursuant to 11 U.S.C. § 549)

47. Plaintiff Old Ladder Litigation Co., LLC repeats and realleges paragraphs 1 through 46 as though fully set forth herein.

48. Pursuant to §549(a) of the Bankruptcy Code, the Litigation Designee may avoid a transfer of property of the estate –

 (1) that occurs after the commencement of the case; and

 (2)(A) that is authorized only under section 303(f) or 542 (c) of this title; or

 (B) that is not authorized under this title or by the court

11 U.S.C. §549(a).

49. To the extent any pre-petition transfers cleared and/or were received after the date of petition, those Transfers constitute avoidable transfers pursuant to section 549(a) of the Bankruptcy Code.

## COUNT FIVE
### (Recovery of Avoided Transfers Pursuant To 11 U.S.C § 550)

50. Plaintiff Old Ladder Litigation Co., LLC repeats and realleges paragraphs 1 through 49 as though fully set forth herein.

51.  Pursuant to section 547(b) of the Bankruptcy Code, the Litigation Designee may avoid the Transfers.  Pursuant to section 550(a) of the Bankruptcy Code, the Litigation Designee may recover, for the benefit of the estates, the Transfers, or the value of the Transfers, from Defendant and/or any immediate or mediate transferee.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Old Ladder Litigation Co., LLC demands judgment as follows:

A.  With respect to the first claim:

    (1)  For monetary damages according to proof at trial;

    (2)  Pre-judgment and post-judgment interest; and

    (3)  Attorney's fees and costs;

    (4)  Such orders as are necessary to effectuate this Prayer for Relief or to preserve this Court's jurisdiction over the parties and issues herein; and

    (5)  Such other and further relief as this Court deems just and proper.

B.  With respect to the second, third, fourth and fifth claims:

    (1) Declaring that the Transfers (plus the amount of any additional transfers of property of the Debtors to Defendant during the Preference Period, or during the one year period prior to the Petition Date if the Defendant was an insider, that discovery may reveal) to Defendant constitute avoidable preferential transfers pursuant to section 547 of the Bankruptcy Code;

    (2) Declaring that the Transfers made within two years of the petition date resulted in the Debtors receiving less than reasonable equivalent value for the transfer and that the Debtors were insolvent on the date that the transfer(s) were made pursuant to section 548 of the Bankruptcy Code;

(3) Declaring that the Transfers made prior to the Petition Date which were received and/or cleared after the Petition date are avoidable pursuant to section 549 of the Bankruptcy Code.

(4) Avoiding the Transfers (plus the amount of any additional transfers of property of the Debtors to Defendant, during one year period prior to the Petition Date or during the Preference Period in each case, as applicable to the cause of action that discovery may reveal) and directing and ordering that Defendant return to the Litigation Designee, pursuant to section 550 of the Bankruptcy Code, the full value of, and awarding judgment against Defendant in an amount equal to: (i) the Transfers; (ii) interest from the date the Transfers were made through the date of the payment at the maximum legal rate; and (iii) the Litigation Designee's attorneys' fees and costs incurred in this suit;

(5) If Defendant filed a proof of claim pursuant to section 501 of the Bankruptcy Code (a "Filed Claim"), then disallowing the Filed Claim until such time as; (i) Defendant turns over to the Litigation Designee any property deemed recovered pursuant to section 550 of the Bankruptcy Code; and/or (ii) Defendant has paid the amount for which Defendant is liable pursuant to Section 550 of the Bankruptcy Code; and

(6) Pre-judgment and post-judgment interest; and

(7) Attorney's fees and costs;

(8) Such orders as are necessary to effectuate this Prayer for Relief or to preserve this Court's jurisdiction over the parties and issues herein; and

(9) Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff Old Ladder Litigation Co., LLC hereby demands a trial by jury of any and all issues so triable.

Dated: June 12, 2008

Respectfully submitted,

FOX ROTHSCHILD LLP

*/s/ Samantha Evans*

Samantha H. Evans (SE 0728)
100 Park Avenue, 15th Fl.
New York, NY 10017
Telephone: 212- 878-7900
Facsimile: 212-692-0940
*Attorneys for Plaintiff
Old Ladder Litigation Co., LLC,
As Litigation Designee on behalf
Of the Liquidation Trust*

Daniel K. Astin*
Anthony M. Saccullo*
FOX ROTHSCHILD LLP
Citizens Bank Center, Suite 1300
919 North Market Street
Wilmington, DE 19801
Telephone: 302-654-7444
Facsimile: 302-656-8920

**FREEDMAN & TAITELMAN, LLP**
Michael A. Taitelman*
1901 Avenue of the Stars, Suite 500
Los Angeles, California 90067
Telephone: 310-201-0005
Facsimile: 310-201-0045

*seeking admission pro hac vice*

NY1 129554v1 06/12/08

**EXHIBIT A**

Case 1:08-cv-05355-HB   Document 4   Filed 06/13/2008   Page 13 of 15

| Defendant | Payment Number | Clear Date | Invoice Number | Payment Amount |
|---|---|---|---|---|
| **Price Waterhouse Coopers LLP** | | | | |
| | 702426 | $128,371.00 | | |
| | | 3/28/2006 | 1030462981-8 | $128,371.00 |
| | 707816 | $64,763.00 | | |
| | | 6/2/2006 | 1030505208-5 | $64,763.00 |
| | 708073 | $25,800.00 | | |
| | | 6/7/2006 | 1030528342-5 | $25,800.00 |
| **Total Transfers** | | **$218,934.00** | | |

| PRICE WATERHOUSE COOPERS LLP | | | |
|---|---|---|---|
| Payment Number | Payment Date | Clear Date | Total Payment Amount |
| 706864 | 5/17/2006 | 7/12/2006 | $ 42,970.00 |
| 708355 | 6/7/2006 | 7/12/2006 | $ 19,048.00 |
| | | **TOTAL** | **$62,018.00** |